1  MICHAEL C. BAUM (SBN 65158)
   E-Mail: mbaum@rpblaw.com
2  SANDRA KHALILI  (SBN 187809)
   E-Mail: skhalili@rpblaw.com
3  ANDREW V. JABLON (SBN 199083)
   E-Mail: ajablon@rpblaw.com
4  RESCH POLSTER & BERGER LLP
   9200 Sunset Boulevard, Ninth Floor
5  Los Angeles, California 90069-3604
   Telephone:  310-277-8300
6  Facsimile:  310-552-3209

7  Attorneys for Plaintiff
   FTC Commercial Corp.

8

9              UNITED STATES DISTRICT COURT

10             CENTRAL DISTRICT OF CALIFORNIA

11

12  FTC COMMERCIAL CORP., a          Case No. 08-CV-08431 GAF
    California corporation,
13                                   **OPPOSITION TO DEFENDANTS**
              Plaintiff,             **GREEN MOCHI, LLC, ARMEN**
14                                   **GREGORIAN AND MIKE &**
          vs.                        **CHRIS, LLC'S MOTION TO**
15                                   **DISMISS PLAINTIFF'S FIRST**
    M & C APPAREL GROUP, INC., a     **AMENDED COMPLAINT**
16  California corporation; RIAN D.  **PURSUANT TO FRCP 12(b)(6) OR**
    GONZALEZ, an individual; ARMEN   **ALTERNATIVELY TO STAY THIS**
17  GREGORIAN, an individual; MIKE & **ACTION OR REFER TO THE**
    CHRIS, LLC, a California limited **BANKRUPTCY COURT**
18  liability company; GREEN MOCHI,
    LLC, a California limited        **[Declaration of Andrew V. Jablon**
19  liability                        **and Request for Judicial Notice Filed**
    company,                         **Concurrently]**
20            Defendants.
                                     Date:    April 6, 2009
21                                   Time:    9:30 a.m.
                                     Crtrm.: 740
22

23

24

25

26

27

28

382015.1

# **TABLE OF CONTENTS**

Page

I.   INTRODUCTION ............................................................... 7

II.  LEGAL ARGUMENT ........................................................ 7

   A.   The Instant Action Does Not Violate The Automatic Stay: FTC Is Seeking To Recover *Its* Property, And Enforce *Its* Rights Against The Non-Debtor Defendants ....................................... 7

      1.   The Non-Debtor Defendants Have The Burden Of Proof In Convincing The Court To Exercise Its Authority To Determine The Applicability Of The Automatic Stay ................ 9

      2.   The FAC Alleges Sufficient Facts To Establish Standing ........ 10

      3.   The Evidence Before The Court Establishes That The FAC Seeks Recovery Of *Plaintiff's* Property ............................ 11

      4.   Plaintiffs Should Be Afforded The Right To Complete Discovery On Issues Related To The Proposed Stay ................ 13

   B.   The First Amended Complaint Properly Alleges Each Of Its Claims For Relief ................................................................. 14

      1.   Plaintiff Has Standing To Bring Each Of Its Claims ................. 14

      2.   The Conversion Claim Is Properly Alleged .............................. 15

      3.   The Fraudulent Conveyance Claim Is Properly Alleged ........... 16

      4.   The Interference With Contract Claim Is Properly Alleged ....... 17

         (a)   Plaintiff Alleges A Valid Contract Between Plaintiff And Third Parties ............................................................. 18

         (b)   Defendant's Knowledge Of The Orders And Intentional Acts Designed To Induce A Breach Or Disruption Of The Contractual Relationship Are Clearly Alleged ................................................................ 19

         (c)   Actual Breach Or Disruption Of The Contractual Relationship And Resulting Damage Is Adequately Pled ...................................................................................... 19

      5.   The Trademark Infringement Claims Are Properly Alleged ...... 20

      6.   Misappropriation Of Trade Secrets ........................................... 21

         (a)   The FAC Properly Pleads Misappropriation of Trade Secrets. ...................................................................... 21

resch polster & berger llp

2

(i)     The FAC Pleads that FTC Owned the
        Customer List and Pending Order
        Information, Which are Trade Secrets. ................. 22

(ii)    The FAC alleges misappropriation by
        Defendants. ........................................................... 23

(iii)   The FAC properly alleges causation and
        damages. ................................................................ 23

7.      The Unfair Competition Claim Is Properly Alleged .................. 24

III.    CONCLUSION ............................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Federal Cases</u>

*Amedys v. National Century Finance Enterprises, Inc.*
    423 F.3d 567 (6th Cir. 2005) ................................................................. 8

*American Manufacturing Company, Inc. v. Phase Industries, Inc.*
    192 U.S.P.Q. (BNA) 498 (Trademark Trial & App. Bd. 1976)......................20-21

*In re Baldwin-United Corp. Litigation*
    765 F.2d 343 (2d Cir. N.Y. 1985) ........................................................ 9

*Matter of Boyd*
    11 F.3d 59 (5th Cir. 1994) ................................................................. 8

*Chugach Forest Products, Inc.*
    23 F.3d 241 (9th Cir. 1994) ............................................................... 8

*In re Cincom iOutsource, Inc.*
    398 B.R. 223 (Bankr. S.D. Ohio 2008) ................................................. 9

*Enron Oil  Trading & Transport Co. v. Walbrook Insurance Co.*
    132 F.3d 526 (9th Cir. 1997) ..........................................................23-24

*Hydranautics v. Filmtec Corporation*
    70 F.3d 533 (9th Cir. 1995) ............................................................... 14

*Jones v. Clinton*
    72 F.3d 1354 (8th Cir. 1996) ............................................................. 10

*Kramer v. Time Warner Inc.*
    937 F.2d 767 (2nd Cir. 1991) ............................................................. 12

*Landis v. North American Co.*
    299 U.S. 248 (1936) ......................................................................... 10

*Lee v. City of Los Angeles*
    250 F.3d 668 (9th Cir. 2001) ............................................................. 13

resch polster & berger LLP

*Lockyer v. Mirant Corp.*

398 F.3d 1098 (9th Cir. 2005) .................................................................... 9, 10

*Metal Lite, Inc. v. Brady Construction Innovations, Inc.*

558 F.Supp.2d 1084 (C.D. Cal. 2007) ............................................................ 19

*In re Miller*

262 B.R. 499 (9th Cir. BAP 2001) ................................................................... 9

*Sacks v. Office of Foreign Assets Control*

466 F.3d 764 (9th Cir. 2006) ......................................................................... 14

*Seiko Epson Corp. v. Nu-Kote International, Inc.*

190 F.3d 1360 (Fed. Cir. 1999) ....................................................................... 8

*Taylor v. Charter Medical Corp.*

162 F.3d 827 (5th Cir. 1998) ......................................................................... 12

*Twentieth Century Fox Film Corporation v. Marvel Enterprises, Inc.*

220 F.Supp.2d 289 (S.D.N.Y. 2002) .............................................................. 14

*United States v. Dos Cabezas Corp.*

995 F.2d 1486 (9th Cir. 1993) ......................................................................... 8

*United States v. Jones*

29 F.3d 1549 (11th Cir. 1994) ........................................................................ 13

*Wyatt v. Terhune*

315 F.3d 1108 (9th Cir. 2003) ........................................................................ 13

## State Cases

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.,*

11 Cal.4th at p. 392 ....................................................................................... 18

*Golden State Linen Service, Inc. v. Vidalin*

69 Cal.App.3d 1 (1977) .................................................................................. 23

*Kuhlman v. Pacific States Savings and Loan Company*

17 Cal.2d 820 (1941) ..................................................................................... 17

*LiMandri v. Judkins*

    52 Cal.App.4th at p. 343 ............................................................... 18

*Morlife, Inc. v. Perry*,

    56 Cal.App.4th 1514 (1997) ....................................................... 22

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*

    50 Cal.3d 1118 (1990) ................................................................. 18

*Quelimane Co. v. Stewart Title Guaranty Co.*

    19 Cal.4th 26 (1998) ................................................................... 18

*Shopoff & Cavallo LLP v. Hyon*

    167 Cal.App.4th 1489 (2008) ..................................................... 15

## <u>Federal Statutes and Rules</u>

11 *U.S.C.* § 362 ................................................................. 7, 8, 9, 10, 13

*Fed. R. Civ. P.* 9 ........................................................................... 17

Local Rule 7 ...................................................................................... 7

## <u>State Statutes</u>

*Cal. Civ. Code* § 3426.1 ............................................................... 22

## <u>Miscellaneous</u>

Cal. Civ. Jury Instructions No. 4401 ........................................... 21

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

*Non-debtor* defendants Armen Gregorian, Mike & Chris, LLC, and Green Mochi LLC (collectively the "Non-Debtor Defendants") have filed the instant Motion to Dismiss, or Alternatively to Stay or Transfer (the "Motion") based on a fundamental misrepresentation regarding Plaintiff's claims.  Specifically, the Non-Debtor Defendants misrepresent the claims against them in an effort to: (1) shoehorn themselves into the automatic stay provisions of 11 U.S.C. § 362; and (2) argue that the First Amended Complaint ("FAC") fails to state sufficient facts to set forth a claim for relief.[1]   As will be discussed below, the Motion must be denied as the claims against the Non-Debtor Defendants do not implicate the bankruptcy estate of either M&C Apparel Group, Inc. ("M&C Apparel") or non-defendant Michelangelo Gonzales ("Mike"), and the FAC properly sets forth each of the claims against the Non-Debtor Defendants.

**II.    LEGAL ARGUMENT**

    **A.    The Instant Action Does Not Violate The Automatic Stay: FTC Is Seeking To Recover *Its* Property, And Enforce *Its* Rights Against The Non-Debtor Defendants**

The Non-Debtors initially argue that the Motion must be granted, and the action dismissed, because the filing and maintenance of the instant action violates the 11 U.S.C. § 362 automatic stay.  (Motion, 5:22 – 7:11.)  The automatic stay

---

[1] The parties did meet and confer as to the original complaint in December, 2008 regarding the issue of the bankruptcy and whether Plaintiff had standing in light of the bankruptcy.  In violation of Local Rule 7, however, the Non-Debtor Defendants failed to meet and confer regarding their arguments that the FAC failed to state a claim for reasons other than standing.   (Declaration of Andrew V. Jablon, ¶ 2.)

resch polster & berger LLP

provisions of 11 U.S.C. § 362, however, apply only to debtors, and not to their co-defendants. *In re Miller*, 262 B.R. 499 (9th Cir. BAP 2001); *Chugach Forest Products, Inc.*, 23 F.3d 241 (9th Cir. 1994); *United States v. Dos Cabezas Corp.*, 995 F.2d 1486 (9th Cir. 1993); *Seiko Epson Corp. v. Nu-Kote Int'l, Inc.*, 190 F.3d 1360, 1364 (Fed. Cir. 1999). In *Miller*, the Ninth Circuit held that "Section 362(a)(1) applies only to actions against a debtor", and allowed discovery to continue against a bankrupt party, as long as the discovery was related to the claims against the other defendants. *In re Miller*, 262 B.R at 503. Simply put, "section 362(a) does not stay actions against guarantors, sureties, corporate affiliates, or other non-debtor parties or their property." *In re Chugach*, 23 F. 3d at 246 (quoting *In re Advanced Ribbons & Office Prods.*, 125 B.R. 259, 263 (9th Cir. BAP 1991)).

There is absolutely *no* authority prohibiting Plaintiff's prosecution of its claims against Non-Debtor Defendants arising out of property to which the bankrupt estate(s) have no legal or equitable interest. *See*, *Matter of Boyd*, 11 F.3d 59, 61 (5th Cir. 1994) (bankruptcy petition filed after extinguishment of debtor's rights to foreclosed property had no effect on foreclosed property). Moreover, "it is clearly established that the automatic stay does not apply to non-bankrupt co-defendants of a debtor 'even if they are in a similar legal or factual nexus with the debtor.'" *Seiko Epson Corp.*, 190 F.3d at 1364 (quoting *Maritime Elect. Co. v. United Jersey Bank*, 959 F.2d 1194, 1205 (3rd Cir. 1991)).

Accordingly, the Non-Debtor Defendants' reliance on *Amedys v. National Century Fin. Enters., Inc.* 423 F.3d 567 (6th Cir. 2005) is misplaced. In *Amedys* the creditor sued the debtor's bank to recover the *debtor's* funds in possession of the bank. Moreover,

> the focus of the inquiry under § 362(a)(3) is on whether a judgment against the solvent codefendants would actually deplete the bankruptcy estate. *National Century*, 423 F.3d at 579 (citing, *Patton* 8 F.3d at 349).

*In re Cincom iOutsource, Inc.*, 398 B.R. 223 (Bankr. S.D. Ohio 2008).

Here, Plaintiff is not seeking to recover the Debtors' funds from the Non-Debtor Defendants.  On the contrary, as discussed below, on the face of the FAC, and as supported by the admissible evidence before the Court, Plaintiff is seeking to prosecute *direct* claims against Non-Debtor Defendants for their interference with property which belongs to Plaintiff and in which Plaintiff has a *direct* interest.  As such, a judgment against the Non-Debtor defendants would *not* deplete either of the bankruptcy estates as the evidence before the Court establishes that neither estate has a legal or equitable interest in the subject property.

               1.      **<u>The Non-Debtor Defendants Have The Burden Of Proof In Convincing The Court To Exercise Its Authority To Determine The Applicability Of The Automatic Stay</u>**

Whether the stay applies to litigation otherwise within the jurisdiction of a district court or court of appeals is an issue of law within the competence of both the court within which the litigation is pending [citations] . . . The court in which the litigation claimed to be stayed is pending has jurisdiction to determine not only its own jurisdiction but also the more precise question whether the proceeding pending before it is subject to the automatic stay.

*In re Baldwin-United Corp. Litigation*, 765 F.2d 343, 347 (2d Cir. N.Y. 1985). Cited to with approval by *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1106 (9th Cir. 2005) ("[A] district court has jurisdiction to decide whether the automatic stay applies to a proceeding pending before it, over which it would otherwise have jurisdiction.)

Plaintiff has not been able to locate any cases directly addressing the burden of proof with respect to a Motion to Stay an action under 11 U.S.C. § 362.

Nonetheless, where Courts have addressed the propriety of a stay generally, the burden has fallen squarely on the party seeking the stay to establish its legal, factual, and equitable support.  For example, in seeking an equitable stay under *Landis v. North American Co.*, 299 U.S. 248 (1936), the party who seeks the stay bears the burden of showing hardship or inequity in being forced to move forward if there is "even a fair possibility that the stay for which he prays will work damage to someone else." *Lockyer*, 398 F.3d at 1109 (9th Cir. 2005); *Jones v. Clinton*, 72 F.3d 1354, 1364 (8th Cir. 1996) ("Traditionally, an applicant for a stay has the burden of showing specific hardship or inequity if he or she is required to go forward."). Similarly, in a Motion for Relief from Stay under 11 U.S.C. § 362, with the exception of whether the debtor has equity in the challenged asset(s), the party *opposing* relief from stay bears the burden of proof and persuasion.

> (g)    In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section--
>
> > (1)  the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and
> >
> > (2)   the party opposing such relief has the burden of proof on all other issues.

Since Defendants are in the same position as a party opposing a Plaintiff's pursuit of calims outside bankruptcy, it follows, therefore, that *Defendants* have the burden of proving that the 11 U.S.C. § 362 automatic stay applies to the present action – a burden they have completely failed to meet.

### 2.    The FAC Alleges Sufficient Facts To Establish Standing

Initially, the Non-Debtor Defendants mischaracterize the FAC, claiming that the causes of action against them concern property of M&C Apparel and deceitfully claiming that the property is expressly alleged in the FAC to be "M&C Apparel's"

10

resch polster & berger LLP

1  property.  The Non-Debtor Defendants' claim is transparently false and blatantly

2  misconstrues the allegations of the FAC.

3      Defendants disingenuously cite to Paragraphs 11 and 95[2] of the FAC for the

4  proposition that this action seeks, as to the Non-Debtor Defendants, "recovery of

5  property of a bankruptcy estate."   The paragraphs cited by the Non-Debtor

6  Defendants simply set forth the undisputed fact that M&C Apparel granted a

7  security interest to Plaintiff in all of its tangible and intangible property, including

8  after acquired property.  (FAC, ¶ 11 (quoting language of the underlying factoring

9  agreement); ¶ 96 ("[a]s discussed above, FTC acquired a security interest in, among

10  other things, the Trademark as part of the FTC Agreements. . . . ").)  The Non-

11  Debtor Defendants simply ignore that the FAC unambiguously sets forth that the

12  secured collateral, defined in ¶ 11 of the FAC, was *surrendered to Plaintiff* prior to

13  M&C Apparel or Mike filing for bankruptcy protection.   (FAC, ¶¶ 27-29.)

14  Accordingly, the FAC makes clear that *Plaintiff* is the lawful owner of the subject

15  property.

### 3.   The Evidence Before The Court Establishes That The FAC Seeks Recovery Of *Plaintiff's* Property

18  The Non-Debtor Defendants further challenge the FAC on the grounds that it

19  violates the automatic stay by attempting to submit evidence that the Bankruptcy

20  Court has already determined that the subject property belongs to the bankruptcy

21  estate.   Initially, all of the purported evidence submitted by the Defendants is

22  inadmissible for the reasons set forth in the concurrently filed *Evidentiary*

23  *Objections to Defendants' Request For Judicial Notice*.  Moreover, the Non-Debtor

24  Defendants "evidence" has been grossly distorted in an attempt at misleading the

25

26  _____

27  [2]  Plaintiff assumes that the Non-Debtor Defendants meant Paragraph 96, as Paragraph 95 only incorporates by reference Paragraphs 1 – 41 of the FAC.

28

1   Court.

2        First, the Non-Debtor Defendants disingenuously argue that the February 3,

3   2009 *Ex Parte* Application by the Bankruptcy Trustee to sell the subject property

4   supports their position as it "is supported by a Stipulation for sale signed by

5   Plaintiff."   (Motion (6:22-24.)   The Motion ignores that the Stipulation *expressly*

6   *provides*:

7                      9.    The Parties further agree that the Court's approval

8                      of this Sale Stipulation shall in no way whatsoever be

9                      construed as a determination that the Property is or is not

10                     property of the estate.

11  (*Plaintiff's Request for Judicial Notice In Support Of Its Opposition To Defendants'*

12  *Motion To Dismiss* ("RJN"), ¶ 6, Stipulation Among Debtor, FTC Commercial

13  Corp. And Chapter 7 Trustee Re Sale Of Personal Property.)  Plaintiff's position has

14  been consistent – it owns the subject property.   The Stipulation (and *ex parte*

15  Application) was necessary simply because the Non-Debtor Defendants were still in

16  possession, custody, or control of the items, and it was the only way which

17  possession of these depreciating assets could be acquired and the goods sold in an

18  expeditious fashion.

19       Continuing their attempt at deception, the Non-Debtor Defendants (without

20  regard to the rules of evidence) point to an unauthenticated purported website

21  printout of a *tentative* ruling by the Bankruptcy Court, that was never adopted.

22  There is no authority for the Court to take judicial notice of another Court's *tentative*

23  ruling that was never adopted.  Moreover, even if treated like an actual Order, non-

24  Debtor Defendants ignore the fact that a court may take judicial notice of a

25  document filed in another court "not for the truth of the matters asserted in the other

26  litigation, but rather to establish the fact of such litigation and related filings."

27  *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2nd Cir. 1991); *Taylor v. Charter*

28  *Med. Corp.*, 162 F.3d 827, 829-830 (5th Cir. 1998).   Thus, while a court may

resch polster & berger LLP

1  judicially notice another court's order, it may not accept that court's "findings of

2  fact" as true.  *Wyatt v. Terhune*, 315 F.3d 1108, 1114 (9th Cir. 2003); *United States*

3  *v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994); *Lee v. City of Los Angeles*,  250 F.3d

4  668, 690 (9th Cir. 2001).

5       Further, the Non-Debtor Defendants fail to acknowledge that Plaintiff has

6  already obtained a ruling in this action (while it was in the Los Angeles Superior

7  Court), based on *admissible* evidence that *the subject property belongs to Plaintiff*.

8  *See*, RJN, ¶¶ 1-3.  Unlike the *tentative* order, in a separate action, cited above, this

9  prior ruling is from this action.

10      The declarations submitted by Plaintiff in support of its Applications for Writ

11  of Attachment and Writ of Possession (RJN, ¶ 4), which are incorporated herein by

12  reference, establish, by way of admissible evidence, that Plaintiff has standing to

13  bring this action against the Non-Debtor Defendants, and that Plaintiff is the lawful

14  owner of the collateral in question.  As these declarations remain uncontroverted by

15  the Non-Debtor Defendants, the Motion must be denied.

16          **4.      Plaintiffs Should Be Afforded The Right To Complete**

17                 **Discovery On Issues Related To The Proposed Stay**

18      In the event that the Court is inclined to grant the Non-Debtors' Motion to

19  Stay the action under 11 U.S.C. § 362, Plaintiff requests the opportunity to complete

20  discovery into the issues addressing the stay and leave to submit supplemental

21  briefing.  If the Court finds that 11 U.S.C. § 362 applies, Defendants will then argue

22  that the Court's finding adjudicates that Plaintiff's claims and property belong to the

23  estate(s), and Defendants will seek to bar an adversarial proceeding by Plaintiff in

24  the Bankruptcy Court.  Although Plaintiff does not believe this would be a factually

25  or legally proper result, Plaintiff should be given the opportunity to conduct

26  discovery now necessary to demonstrate the propriety of its claims and the

27  inapplicability of the automatic stay provisions.  Specifically, Plaintiffs seek to:

28          (1)      complete the deposition of Green Mochi, LLC's principal,

Armen Gregorian;

(2)   take the deposition of Carmella Parungao, a Green Mochi, LLC's employee and M&C Apparel's former Chief Financial officer;

(3)   take the deposition of M&C Apparel's former accountants; and

(4)   conduct certain focused written discovery establishing the inapplicability of the automatic stay.

Between the foregoing discovery and the scheduled deposition of two Green Mochi, LLC employees on March 18 and 19, 2009, both of which are believed to have information relevant to the issues presented herein, Plaintiff is confident that supplemental briefing would further confirm that FTC owns the subject assets.

**B.   The First Amended Complaint Properly Alleges Each Of Its Claims For Relief**

**1.   Plaintiff Has Standing To Bring Each Of Its Claims**

For purposes of the 12(b)(6) component of the instant Motion, including the challenge to Plaintiff's standing, all of the allegations of material fact in the FAC must be "taken as true and construed in the light most favorable to the nonmoving party." *Hydranautics v. Filmtec Corporation*, 70 F.3d 533, 536 (9th Cir. 1995). Further, the "Court must . . . draw all reasonable inferences in favor of the non-movant; it should not dismiss the complaint unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twentieth Century Fox Film Corporation v. Marvel Enterprises, Inc.*, 220 F.Supp.2d 289, 292 (S.D.N.Y. 2002) (internal quotations omitted).  On the face of the FAC, the detailed factual allegations regarding the surrender of the secured collateral (FAC, ¶¶ 27-29) defeat the Motion to Dismiss based on lack of standing. *See Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 771(9th Cir. 2006) (cited by the Non-Debtor Defendants at Motion, 5:4-5, and holding that, "[t]o survive a Rule 12(b)(6) motion to dismiss, [plaintiff] must allege facts in his Amended Complaint that, if proven, would confer standing upon him.")

resch polster & berger LLP

1    As discussed above, contrary to Defendants' allegations, the claims against
2    the Non-Debtor Defendants' do *not* seek the recovery of property of a bankruptcy
3    estate.  As discussed, the FAC expressly alleges that the assets in question *belong to*
4    *Plaintiff*.  The key allegations for the present Motion are found in paragraphs 27
5    through 29, which unambiguously set forth that the secured collateral, defined in ¶
6    11 of the FAC, was *surrendered to Plaintiff* prior to M&C Apparel or Mike filing
7    for bankruptcy protection.  (FAC, ¶¶ 27-29.)  Defendants' standing argument,
8    therefore, fails as a matter of law.

9                    2.    **The Conversion Claim Is Properly Alleged**

10    To plead a claim for conversion, Plaintiff was required to allege: (1)
11    ownership or right to possession of the property at the time of the conversion; (2)
12    Defendants' conversion by a wrongful act or disposition of property rights; and (3)
13    damages.  *Shopoff & Cavallo LLP v. Hyon*, 167 Cal. App. 4th 1489, 1507 (2008).
14    "It is not necessary that there be a manual taking of the property; it is only necessary
15    to show an assumption of control or ownership over the property, or that the alleged
16    converter has applied the property to his own use."  *Id.*  Here, the Non-Debtor
17    Defendants contend that the FAC fails to set forth a claim for conversion because:
18    (1) "all of the allegedly converted property belongs to either M&C Apparel or
19    Gonzalez" (Motion 9:18-19); (2) "Plaintiff fails to plead any wrongful act or
20    disposition of property rights by Defendants" (Motion, 9:26-27); and (3) "Plaintiff
21    also fails to plead damages adequately".  (Motion, 10:2-3.)  The Non-Debtor
22    Defendants' contentions, however, ignore the plain text of the FAC.

23    Contrary to the Non-Debtor Defendants' contention, the FAC does *not* allege
24    that all of the converted property belongs to either M&C Apparel or Gonzalez.
25    Rather, as discussed above, the FAC sets out that the converted property was subject
26    to a recorded security interest (FAC, ¶ 11) and, as of November 3, 2008, was
27    surrendered to Plaintiff.  (FAC, ¶¶ 27-29.)  These allegations are sufficient to
28    establish for pleading purposes that Plaintiff owned the converted property.

1    Moreover, the FAC properly alleges a wrongful act – namely that, acting in
2    concert with M&C Apparel, the Non-Debtor Defendants stole the subject property.
3    (FAC, ¶¶ 37-40, 60.)   Similarly, the FAC properly alleges damages (FAC, ¶¶ 62-
4    66.)  The Non-Debtor Defendants' apparent argument that the Plaintiff must itemize
5    damages to the penny is simply not based in law.   Plaintiff, by describing the
6    categories of damages it has suffered, satisfies its pleading obligations.

7    Accordingly, as the FAC properly alleges the essential elements of a
8    conversion claim for relief, the Motion must be denied.

9    ### 3.  The Fraudulent Conveyance Claim Is Properly Alleged

10   The Non-Debtor Defendants attack Plaintiff's Fourth Cause Of Action, for
11   fraudulent conveyance, on the grounds that Plaintiff purportedly did not allege that
12   the consideration for the conveyance was inadequate and that the grantee
13   participated in the transaction with the intent to defraud the creditor.   (Motion,
14   10:15-18.)  Again, the Non-Debtor Defendants ignore the express allegations of the
15   FAC.

16   Specifically, the FAC clearly sets forth that the consideration was inadequate
17   at paragraphs 39 and 69, which describe how, purportedly in exchange for
18   $84,130.66, M&C Apparel claimed to have transferred goods (the "On-Site
19   Inventory") worth, at wholesale, more than five hundred thousand dollars
20   ($500,000).    Moreover, the FAC specifically alleges that the Non-Debtor
21   Defendants had actual knowledge of:

22        1.    M&C's debts to FTC;

23        2.    FTC's security interest in, *inter alia*, the On-Site Inventory;

24        3.    FTC's foreclosure on the On-Site Inventory; and

25        4.    M&C's surrender of the On-Site Inventory.

26   (FAC, ¶¶  36-41, 70.)  Moreover, the FAC specifically alleges that the fraudulent
27   conveyance scheme was perpetrated in an "attempt to secure a negotiating
28   advantage over FTC in the on-going negotiations regarding the disposition of the

resch polster & berger LLP

16

1  Collateral." (FAC, ¶ 71)

2       Additionally, the Non-Debtor Defendants, citing to *Kuhlman v. Pacific States*

3  *Savings and Loan Company, et al.*, 17 Cal. 2d 820 (1941), assert that Plaintiff must

4  allege that the grantee "participated in the transaction with the intent to defraud the

5  creditor." (Motion, 10:17-18.)  *Kuhlman*, however, does not limit a grantee's

6  liability to situations in which it "intended" to defraud the creditor.  Rather, the

7  *Kuhlman* Court stated:

8          A conveyance made for a valuable consideration may not be

9          attacked by the grantor's creditor, even though the transaction

10         was entered into by the debtor with intent to delay or defraud

11         his creditors, **unless the grantee so intended or participated**

12         **in *or had knowledge of* the fraudulent intent.**

13 *Kuhlman*, 17 Cal. 2d at 821-822 (emphasis added).  Accordingly, the Non-Debtors'

14 contention that the *Kuhlman* Court held that knowledge alone of the grantor's

15 fraudulent intent was insufficient to state a claim for fraudulent transfer against the

16 grantee is simply incorrect.

17      The allegations of the FAC, which set out in detail the Non-Debtor

18 Defendants' knowledge of the fraudulent intent, and for that matter their

19 participation in the fraud, more than satisfy the *Kuhlman* requirements and the

20 requirements of *Fed. R. Civ. P.* 9(b).

21        **4.**     **The Interference With Contract Claim Is Properly Alleged**

22      The elements which a plaintiff must plead to state the

23      cause of action for intentional interference with

24      contractual relations are (1) a valid contract between

25      plaintiff and a third party; (2) defendant's knowledge of

26      this contract; (3) defendant's intentional acts designed to

27      induce a breach or disruption of the contractual

28

resch polster & berger LLP

resch polster & berger llp

1    relationship; (4) actual breach or disruption of the

2    contractual relationship; and (5) resulting damage.

3    *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

4    Because interference with an existing contract receives

5    greater solicitude than does interference with prospective

6    economic advantage (*Della Penna v. Toyota Motor Sales,*

7    *U.S.A., Inc., supra*, 11 Cal. 4th at p. 392), it is not

8    necessary that the defendant's conduct be wrongful apart

9    from the interference with the contract itself. (*LiMandri v.*

10   *Judkins, supra*, 52 Cal. App. 4th at p. 343.)

11   *Quelimane Co. v. Stewart Title Guaranty Co.* 19 Cal. 4th 26, 55 (1998).  *See also,*

12   *Metal Lite, Inc. v. Brady Constr. Innovations, Inc.*, 558 F. Supp. 2d 1084, 1094

13   (C.D. Cal. 2007) (quoting with approval *Quelimane Company, Inc. v. Stewart Title*

14   *Guaranty Co.)*   Here, the Complaint properly alleges each of the elements of the

15   claim for interference with contract.

16   **(a)**    **Plaintiff Alleges A Valid Contract Between Plaintiff**

17   **And Third Parties**

18   The Non-Debtor Defendants mistakenly argue that there is no allegation of a

19   contract between FTC and any third party alleged in the FAC.  (Motion, 12:1-8.)

20   Defendants ignore, however, that the FAC properly alleges that: (1) Plaintiff had a

21   valid security interest in orders (i.e., Contracts) between M&C Apparel and third

22   parties (the "Orders") (FAC, ¶¶ 25-26; (2) it foreclosed on its security interest in the

23   Orders (FAC, ¶¶ 27-29).  Accordingly, by virtue of the foreclosure, Plaintiff stood in

24   the shoes of M&C Apparel with respect to the Orders, and a valid contract between

25   plaintiff and third parties has been properly alleged.

26   / / /

27   / / /

28   / / /

**(b)** <u>**Defendant's Knowledge Of The Orders And Intentional Acts Designed To Induce A Breach Or Disruption Of The Contractual Relationship Are Clearly Alleged**</u>

The FAC properly sets forth both knowledge and intentional acts designed to induce a breach or disruption in the contractual relationship represented by the Orders.  Specifically, the FAC provides that:

> Additionally, Armen advised FTC that through one or more of their corporate entities, they were in process of fulfilling the Orders, using the stolen inventory, stolen order information, stolen patterns and design, and the Trademark, with the intent to ship to M&C's customers (the "Customers") the resulting product (the "Counterfeit Goods").  The Counterfeit Goods would be shipped by an entity (presumably the Successor LLC or Green) not, on its face, a party to the FTC Agreements.   Armen specifically told Leon Neman, the president of FTC, that if FTC wanted to stop them from engaging in this conduct, FTC would have to file suit and seek an injunction.

(FAC, ¶ 40).

**(c)** <u>**Actual Breach Or Disruption Of The Contractual Relationship And Resulting Damage Is Adequately Pled**</u>

Actual breach or disruption of the contractual relationship arising out of the Orders is expressly alleged in the FAC.  Specifically, the FAC sets forth that:

> Plaintiff is informed and believes, and based thereon alleges, that the Successor LLC, Armen, Green, and Does 2 through 10, and each of them, have or are in the process

1        of purporting to fill the Orders and ship to the Customers

2        in direct interference with FTC's right as the holder of a

3        possessory interest in the Orders.

4  (FAC, ¶ 88).  Similarly, damage resulting from the interference is alleged in the

5  FAC:

6        As a direct, foreseeable and proximate result of

7        interference by the Successor LLC, Armen, Green, and

8        Does 2 through 10, as alleged herein, FTC has been

9        damaged in an amount that is currently unknown, but

10       which shall be proven at trial, and is estimated at no less

11       than one million dollars ($1,000,000).

12  (FAC, ¶ 89.)

13      Having pled all of the requisite elements of a claim for interference with

14  contractual relationships, the Motion must be denied.

15        **5.**    **The Trademark Infringement Claims Are Properly Alleged**

16      The Non-Debtor Defendants assert that, as to the Seventh and Eighth Causes

17  of Action for Trademark Infringement, Plaintiff has "failed to allege facts to

18  establish its purported interest in the MIKE&CHRIS trademark, and thus have no

19  standing to bring trademark infringement claims against Defendants."  (Motion,

20  12:25-27)  Specifically, the Non-Debtor Defendants assert that because the United

21  States Patent and Trademark Office ("USPTO") website purports to show Mike as

22  the owner of the MIKE&CHRIS trademark (the "Trademark"), Plaintiff did not take

23  a security interest in the mark, and thus lacks standing.

24      Initially, the Non-Debtor Defendants' reliance on the purported USPTO

25  website printout is misplaced.  The printout, which is inadmissible, demonstrates

26  nothing other than, at most, the absence of a *recorded* assignment of the Trademark.

27  A trademark assignment – which Plaintiff is informed and believes occurred when

28  Mike transferred assets from the sole proprietorship to the M&C Apparel entity –

1  does not have to be recorded to be effective.  *American Manufacturing Company,*

2  *Inc. v. Phase Industries, Inc.*, 192 U.S.P.Q. (BNA) 498, 500 (Trademark Trial &

3  App. Bd. 1976) ("Neither a formal assignment nor recordation of an assignment in

4  the Patent and Trademark Office is necessary to pass title or ownership to common

5  law or statutory trademark rights.")

6       The express allegations of the FAC , which, as noted above, must be "taken as

7  true and construed in the light most favorable to the nonmoving party"

8  (*Hydranautics*, 70 F.3d at 536) are more than sufficient to set forth standing to bring

9  the trademark infringement claims.  Specifically, the FAC asserts  that:

10          1.    Mike, individually and on behalf of M&C Apparel, as well as

11  other representatives of M&C Apparel, repeatedly represented that M&C Apparel

12  owned the Trademark (FAC, ¶ 38 and 96);

13          2.    The Trademark was (prior to foreclosure by Plaintiff) owned by

14  M&C Apparel (FAC ¶ 96);

15          3.    Plaintiff took a security interest in the MIKE&CHRIS trademark

16  (the "Trademark") (FAC, ¶ 11 and 17); and

17          4.    The secured collateral was surrendered to Plaintiff (FAC, ¶¶ 27-

18  28).

19       Accordingly, the Motion must be denied.

20         **6.**    **Misappropriation Of Trade Secrets**

21            **(a)**    **The FAC Properly Pleads Misappropriation of Trade**

22                **Secrets.**

23       Defendants correctly state the elements of a misappropriation of trade secrets

24  claim:  (1) the plaintiff is the owner of a trade secret; (2) the information was a trade

25  secret at the time of the misappropriation; (3) defendants improperly acquired the

26  trade secret; (4) plaintiff has been damaged by the misappropriation; and (5) the

27  defendant's acquisition was a substantial factor in causing that damage.  *See, e.g.,*

28  Cal. Civ. Jury Instructions No. 4401.  As the FAC pleads each of these elements,

resch polster & berger LLP

rather than actually challenging the sufficiency of the pleading, the Non-Debtor Defendants' motion argues that FTC cannot prove its claim. This is improper, and its motion should be denied.

>   **(i)     The FAC Pleads that FTC Owned the Customer List and Pending Order Information, Which are Trade Secrets.**

A trade secret is information that "(1) derives economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." *Cal. Civ. Code* § 3426.1(d). The FAC here identified two trade secrets: (1) M&C's customer list, and (2) its in-process orders. [FAC ¶ 115.] California has specifically recognized that such information can qualify for trade secret protection. *See Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1522 (1997). *Morlife* found that a customer list can be a trade secret "because its disclosure would allow a competitor to direct its sales efforts to those customers who have already shown a willingness to use a unique type of service or product as opposed to a list of people who only might be interested."

Here M&C's customer list, and its list of in-process orders, provides the same information. *Morlife* further demonstrated why the listing of retailers on M&C's website does not preclude the customer list from being a trade secret. *Morlife* explained that the customers list was a trade secret, in part, because of "the difficulty encountered by sales personnel in getting past the 'gatekeepers' and identifying and gaining access to the actual decision makers with the authority to purchase [goods.]" *Id.* Here, the non-public, protected, information from the customer list and in-process orders provides the same type of information: who the decision makers are at the various retailers, information on how to contact them, how much they have bought in the past, and on what terms. Using this information would allow the

1   Defendants to "to solicit both more selectively and more effectively."  *Morlife*, 56
2   Cal. App. 4th at 1522.  That is exactly what Defendants have done – stealing the in-
3   process orders and attempting to fulfill the orders themselves.  [FAC ¶¶ 39-41.]  As
4   pleaded, the FAC has identified trade secrets protectable under California law.

5       The FAC further alleges that FTC owns the trade secrets by specifically
6   alleging that no later than November 14, 2008, FTC had foreclosed on the
7   Collateral, including the Trade Secrets.  [FAC ¶¶ 28-35.]  Thus, the FAC alleges
8   that FTC owned the Collateral, including the Trade Secrets as of November 14,
9   2008 at the latest.  [*See id.*, ¶ 116.]  FTC has therefore alleged that it owns the Trade
10  Secrets.

11              **(ii)    The    FAC    alleges    misappropriation    by**
12                        **Defendants.**

13      Defendants merely quibble with the exact language used by the FAC.  The
14  FAC alleges that, following FTC's foreclosure on, and M&C's surrender of, the
15  Collateral, including the Trade Secrets, the Defendants had no right to possess or
16  use the customer list, and did so wrongfully.  [FAC ¶ 124.]  The FAC further alleges
17  that Defendants have wrongfully attempted to use those trade secrets.  [*Id.* at ¶¶ 39-
18  41.]  California has found such use to be improper.  *Golden State Linen Service, Inc.*
19  *v. Vidalin*, 69 Cal. App. 3d 1, 7-8 (1977) (holding that "information relative to
20  customers (e.g., their identities, locations, and individual preferences), obtained by a
21  former employee in his contacts with them during his employment, may amount to
22  "trade secrets" which will warrant his being enjoined from exploitation or disclosure
23  after leaving the employment.").  Thus, the FAC properly pleads the Defendants'
24  misappropriation.

25              **(iii)   The    FAC    properly    alleges    causation    and**
26                        **damages.**

27      Defendants argue that FTC must plead (1) a reasonable basis for its damages
28  claim, and (2) facts to establish that Defendants' conduct was a substantial cause of

the damages.  Defendants fail to cite any authority for those propositions because there is none.  To survive a motion to dismiss, all FTC needed to plead is the fact of damage, and that the Defendant was a substantial factor in causing it.  *See Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co*., 132 F.3d 526, 529 (9th Cir. 1997) (holding that a plaintiff is "not required to allege in its complaint the evidentiary facts in support of its theory of recovery.").  The FAC pleads exactly these elements.  [*See* FAC ¶ 126.]

### 7.   The Unfair Competition Claim Is Properly Alleged

The Non-Debtor Defendants seek to strike Plaintiff's claim for common law unfair competition on the basis that Plaintiff failed to allege "passing off".  Specifically, the Motion asserts that

> "[t]he basis of Plaintiff's claim is that Defendants purportedly *misappropriated* the "collateral," not that it was "passing off" Defendants' goods for those of M&C Apparel.  Plaintiff alleges in the Amended Complaint that Defendants were selling the *actual goods* of M&C Apparel, not imitation goods made to appear as genuine, as required by a claim for passing off."

(Motion, 16:20-23).  Defendants' analysis of the FAC is fundamentally flawed, as it conflates two separate wrongs – the theft and subsequent sale of Collateral (FAC, ¶¶ 39, 43-51), and the manufacture and sale of counterfeit goods.

The FAC set forth several critical allegations in support of the unfair competition claim:

1.     Non-Debtor Defendants are selling garments which improperly bear the Mike & Chris trademark (Cite) (the "Counterfeit Garments");

2.     The Counterfeit Garments are being manufactured by the Non-Debtor Defendants using M&C Apparel's patterns, designs, and markers which belong to FTC (by virtue of the foreclosure/surrender) (FAC, ¶ 28, 40-41, 96-111); and

resch polster & berger LLP

1

2

3

4

        3.    The Counterfeit Garments are being sold by the Non-debtor Defendants to customers in "fulfillment" of orders which were placed with M&C Apparel, and which belong to FTC (by virtue of the foreclosure/surrender) (FAC, ¶ 28, 40).

5

6

7

8

     Accordingly, the FAC has properly set forth the necessary elements of an unfair competition claim, as Plaintiff has alleged that the Non-debtor Defendants are manufacturing and selling imitation goods that have been made to appear – by way of the use of the M&C Apparel's patterns, markers and trademarks – as genuine.

9

10

## III.   **CONCLUSION**

11

12

13

     For the reasons set forth above, Plaintiff FTC Commercial Corp. respectfully requests that the Court *deny* Defendants' Motion in its entirety, and order them to file an Answer to the Complaint forthwith.

14   Dated: March 12, 2009         Respectfully submitted,

15                           RESCH POLSTER & BERGER LLP

16

17                          By: _____/S/_____

18                              ANDREW V. JABLON

19                        Attorneys for Plaintiff FTC Commercial Corp.

20

21

22

23

24

25

26

27

28

resch **p**olster & **b**erger LLP